UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LEITH MCLOUGHLIN,                                            Docket No.:

        Plaintiff,

    v.                                            **COMPLAINT**

VILLAGE OF SOUTHAMPTON,                                      **Jury Trial Demanded**

        Defendant.

-------------------------------------------------------------X

       LEITH MCLOUGHLIN ("Plaintiff" or "Ms. Mcloughlin"), by and through her attorneys, THE LAW FIRM OF ADAM C. WEISS, PLLC, brings this action against Village of Southampton ("Southampton" or the "Village") for sex, pregnancy, marital status, and FMLA discrimination, retaliation, and violation of the Family Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and New York State Human Rights Law ("NYSHRL").

## PRELIMINARY STATEMENT

1.     This is a civil action for damages initiated against the Defendant for its unlawful sex, pregnancy, marital status, and FMLA discrimination, retaliation against Plaintiff in violation of the FMLA, Title VII, and NYSHRL

2.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant does business in this District.

3.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      Plaintiff filed a Charge with the United States Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No: 520-2020-05214, on or about July 23, 2020, based on sex and pregnancy discrimination.  Plaintiff filed an Amended Charge with the EEOC on or about March 8, 2023, based on sex and pregnancy discrimination and retaliation.  Efforts to mediate the charge by the EEOC as requested by the EEOC were declined and the EEOC issued a Right to Sue Letter.  Plaintiff received her Right to Sue Letter on or about July 13, 2023.  A copy of the Right to Sue Letter is annexed hereto as Exhibit "A".  Plaintiff has timely filed the instant matter within 90 days of receiving that letter.

## PARTIES

5.      At all relevant times herein, Plaintiff was and is a resident of the State of New York.  She presently resides in Suffolk County, New York.

6.      At all relevant times herein, Plaintiff is a "person" and an "employee" within the meaning of ADA, Title VII, and NYSHRL.

7.      At all relevant times herein, Defendant was and is an "employer" within the meaning of the FMLA, Title VII, and NYSHRL.

8.      At all relevant times herein, Defendant employed 50 or more employees.

9.      Plaintiff, Leith Mcloughlin, resides at 3 Beth Lane, Hampton Bays, New York 11946.

10.      Defendant, Village of Southampton, is a village organized under federal and state statutes, with its offices located at 23 Main Street, Southampton, New York 11968, in the County of Suffolk.

## BACKGROUND FACTS

11.     Plaintiff began her employment with Defendant in May 2008 as a Justice Court Clerk.

12.     As a Justice Court Clerk, Plaintiff was responsible for performing various duties both in and out of court and was supervised by a Justice of the Court.  Plaintiff works in the Courtroom when the Judge takes the bench and perform general clerical duties when court is not in session. These duties include, but are not limited to, staffing a window open to the public where individuals can pay tickets or fines and/or make inquiries.

13.     Plaintiff have worked directly for Judge Barbara Wilson since she began her employment. Judge Wilson serves as both a Town of Southampton Justice and Village of Southampton Justice.

14.     Throughout Plaintiff's tenure, up to and until September 2019, Judge Wilson and Plaintiff maintained a professional working relationship. While Judge Wilson has always been a demanding supervisor, prior to her learning of Plaintiff's pregnancy she did not mistreat Plaintiff. Plaintiff received positive reviews from her, had never been written up and she advocated on her behalf for a pay raise in the beginning of 2019.

15.     In or about September 2019, Plaintiff informed Judge Wilson that Plaintiff was pregnant.

16.     Thereafter, her behavior towards Plaintiff changed. Her treatment of Plaintiff became openly hostile and she began questioning all of Plaintiff's work and the manner in which it was performed, including completed assignments and assignments that were in progress.

17.      For example, during a staff meeting in or about October 2019, Plaintiff stated she would text an individual to whom the Judge directed Plaintiff to reach out. Judge Wilson believed Plaintiff should call the individual and asked, "What are you, stupid?" This remark was made in front of colleagues.

18.      On or about December 9, 2019, Judge Wilson announced that she was considering moving Plaintiff's workstation from the desk Plaintiff maintained for over eleven (11) years, which was in the immediate proximity of the service window and the other Justice Court Clerk to a remote office.

19.      Despite there being an open office in close proximity to the service window and the other Court Clerk, the office to which Judge Wilson wished to relocate Plaintiff was a back office removed from Plaintiff's prior location that she had been using as storage room.

20.      In explanation, Judge Wilson said, "You're pregnant and cannot seem to concentrate." She also indicated that the office would be better because Plaintiff would be breastfeeding. Plaintiff had never discussed with the Judge whether or not Plaintiff planned to breastfeed.

21.      In addition, during the conversation about moving Plaintiff's workstation, Judge Wilson questioned Plaintiff's civil service credentials and informed Plaintiff that she was "hire and fire at will."

22.      That same day Plaintiff went to speak to Russell Kratoville, the then-Village Administrator and the individual designated to receive and process complaints of workplace harassment. Plaintiff advised him that the Judge was targeting Plaintiff because of her pregnancy.

23.     In response, Mr. Kratoville dismissed Plaintiff's complaint and told her the Judge's actions were not a form of harassment and that she was just "a boss doing her job".

24.     The following day, December 10, 2019, the Judge called Plaintiff into the courtroom numerous times and each time belittled Plaintiff in the presence of attorneys and other court personnel. For example, in one instance she told Plaintiff she knew Plaintiff did not know what Plaintiff was doing. Her comments brought Plaintiff to tears and Plaintiff requested the Judge stop treating Plaintiff in such a manner since Plaintiff was seven (7) months pregnant. She responded, "what does that mean?" and told Plaintiff she was sixty (60) years old.

25.     Judge Wilson then went on vacation for the remainder of the year.

26.     Upon her return to the Village Court, on or about January 13, 2020, Judge Wilson inquired why Plaintiff's workstation had not been moved as directed in December. Plaintiff's colleague and Plaintiff were surprised by the Judge's question since she had indicated she was merely considering moving Plaintiff's workstation and it could not have been completed in her absence because only she had the requisite authority to requisition the Village personnel necessary to move workstations.

27.     On or about January 14, 2020, during the Judge's first court appearance in the new year, she called Plaintiff into open court in the presence of approximately fifteen (15) attorneys and thirty (30) defendants. She then proceeded to scream at Plaintiff regarding missing paperwork for specific defendant. The attorney for the defendant attempted to interject to tell the Judge he did not complete the paperwork as directed, however, Judge

Wilson did not listen and continued to berate Plaintiff for a mistake attributable to the defense attorney.

28.     Throughout January, Plaintiff repeatedly reached out to the Village Administrator and complained, but no corrective action was taken.

29.     On January 23, 2020, Plaintiff inquired of the Village Administrator the policy and procedure for filing a formal complaint and expressed her disappointment that he had made no efforts to mediate the issue and end Judge Wilson's hostile treatment of Plaintiff.

30.     Ultimately, on January 24, 2020, Plaintiff submitted a formal "Complaint of Unlawful Harassment" with the Village regarding Judge Wilson's actions. In the letter accompanying the Complaint Plaintiff stated Judge Wilson was targeting Plaintiff because of her pregnancy and was trying to make Plaintiff's situation untenable so Plaintiff would not return after she had her baby.

31.     On or about February 6, 2020, Plaintiff was interviewed by the Village Administrator in response to her Complaint. During this interview, Plaintiff outlined specific incidents of harassment that occurred since she informed Judge Wilson of her pregnancy. Plaintiff  also detailed Judge Wilson's abusive treatment of her in nearly all aspects of Plaintiff's work.

32.     After the interview, the Village Administrator again indicated he felt the situation was the result of poor management and that it would be a learning experience for both Plaintiff and the Judge.

33.     Upon information and belief, on or about February 10, 2020, Judge Wilson learned about Plaintiff's Complaint.

34.     Thereafter, on February 21, 2020, Judge Wilson denied an overtime and compensatory time request Plaintiff had submitted. This was the first time in the nearly twelve (12) years of Plaintiff's employment with the Village that Plaintiff had an overtime or compensatory time request denied.

35.     Upon Judge Wilson's return in the new year and until Plaintiff's maternity leave, she began further scrutinizing Plaintiff's work and questioning Plaintiff persistently as to whether her work was being completed.

36.     On February 26, 2020, Plaintiff gave birth to a daughter.

37.     Beginning in March, while out on maternity leave, Judge Wilson called Plaintiff nearly every day inquiring about the status of Court matters, the location of files, and questioning work that Plaintiff had performed prior to her leave.

38.     On or about March 4, 2020, Plaintiff offered to come in and help look for a file that Judge Wilson was repeatedly asking about. In response, the Judge told Plaintiff she was not allowed in the office and was not welcome there. She said Plaintiff was "not to step foot in the office" and if Plaintiff did the Judge would write Plaintiff up for insubordination.

39.     Upon information and belief, other Village employees are permitted to work intermittently and return to the office as necessary while on leave.

40.     On or about March 10, 2020, Plaintiff was required to come in for a quarterly meeting. At this time, Plaintiff learned that the Judge had moved her workstation to the back office the week before - on the day she threatened to write Plaintiff up and told Plaintiff not to come into the office.

41.     On or about March 18, 2020, the Village Court closed due to the COVID-19 pandemic. Although the Court was closed, personnel were still going into the office periodically.

42.     In or around April 2020, Judge Wilson called Plaintiff and told Plaintiff she was restricted from the building because Plaintiff had been exposed to COVID-19.

43.     Upon information and belief, the Judge told coworkers that Plaintiff had been exposed to COVID-19 and that Plaintiff may be positive.

44.     This information was completely false.

45.     On or about May 1, 2020, Court personnel, including Plaintiff, returned to work in-person, in a part-time capacity.

46.     At this time, Plaintiff began working at her new desk location. Since the office where Plaintiff was relocated is removed from the other Court Clerk and the service window, Plaintiff found that she was constantly having to go back to the front and it is more difficult to get work done.

47.     Upon returning in-person to the office, Plaintiff inquired about the status of her Complaint. Plaintiff was told by Mr. Kratoville that the Complaint was still open, but he believed it was simply mismanagement and "we would all learn from this." No corrective action was taken by the Village.

48.     At the end of May, Plaintiff made a formal request to reduce her schedule to a half-day on two days per week because of childcare issues resulting from the pandemic. The Village Administrator directed Plaintiff to put the request in writing.

49.     On or about May 28, 2020, Plaintiff sent the schedule change request to both the Village Administrator and Judge Wilson via electronic mail. In Plaintiff's request she

indicated that she planned to take Wednesdays and Fridays, but could be flexible as necessary depending upon the needs of the Court and would utilize accumulated sick and/or vacation time.

50.     Judge Wilson did not receive the request because of a typo in her email address, but was subsequently forwarded the email by the Village Administrator. Upon learning of Plaintiff's mistake, Judge Wilson berated her for the oversight, and marked Plaintiff down as a "failure to report" on the first half-day Plaintiff worked under the modified schedule.

51.     In addition, Judge Wilson denied the sick time used stating that Plaintiff was not "sick."

52.     Upon information and belief, childcare has historically been treated by the Village as a permissible basis for the use of sick time.

53.     Thereafter, the Village Administrator directed Plaintiff to put in for this time with accrued vacation days. Plaintiff made this change as requested.

54.     In June, Plaintiff again inquired about the status of her Complaint. Mr. Kratoville told Plaintiff that he was still working on it. In addition, during Plaintiff's follow up in June, Mr. Kratoville asked Plaintiff - for the first time - the name of the two attorneys I listed only as "District Attorneys" on her Complaint form.

55.     The Village to date has failed to take any action. Plaintiff's Complaint remains open and, in the file, many months since it was submitted, and despite listing eight (8) witnesses on Plaintiff's original complaint form, no other interviews have been conducted, no meetings have been scheduled and no resolution has been reached.

56.    On or about July 23, 2020, Judge Wilson approached Plaintiff about Plaintiff's modified schedule demanding to know when Plaintiff will "be able to work the hours I was hired to work."

57.    Plaintiff informed the Judge that Plaintiff would need the modified schedule until her daughter's daycare opens, which Plaintiff anticipated would be in September.

58.    In response Judge Wilson told Plaintiff that Plaintiff never had her permission to work a modified scheduled and that she needs someone who can work the hours they were hired to work. She then told Plaintiff that if Plaintiff is not able to fulfill those hours, she will ask the Village Administrator to change Plaintiff's full-time status to part-time.

59.    Plaintiff had been working the modified schedule since June 3, 2020. Neither Judge Wilson nor the Village Administrator has ever requested that Plaintiff switch her designated half-day due to a need of the Court or the Village - as Plaintiff had offered in the original request. All of Plaintiff's assigned work has been timely completed while working this modified schedule, and court operations have not been affected in any way. Plaintiff was utilizing earned vacation and personal time available to her and her time requests over that period had all been approved by the Acting Justice.

60.    Upon information and belief, if Plaintiff's status is changed from full-time to part-time, she will lose her benefits, pension time, bereavement days, and accumulated but unused vacation, personal, and sick days.

61.    On or about July 23, 2020, Plaintiff filed a Charge of Discrimination with the EEOC setting forth the foregoing description of the discrimination and retaliation she faced.

62.      That same day, Plaintiff's attorney forwarded a copy of the EEOC Charge and supporting affidavit to the Village to the attention of Mr. Kratoville.

63.      Plaintiff was informed receipt of facsimile transmission was confirmed.

64.      On a near daily basis since the filing of Plaintiff's Charge with the EEOC, Judge Wilson has inquired about the status of resolved issues and/or ongoing projects. Notably, items that were never an issue in the past had seemingly become an issue.

65.      On September 2, 2020, Judge Wilson issued Plaintiff a counseling memo.

66.      The Village Administrator and a Village Trustee were copied on the counseling memo.

67.      This was the first time in Plaintiff's then-twelve (12) years of employment that she received a counseling memo or write-up or any kind.

68.      The content of the counseling memo is largely false and pretextual. To the extent the content is not false, it is highly contextualized in that the issues addressed may have occurred, but not as presented by Judge Wilson. Likewise, if the events described in the memo were genuine, as Judge Wilson purports, such issues would have been previously brought to Plaintiff's attention.

69.      Finally, Judge Wilson suggests twice in her counseling memo that it may be best for Plaintiff to "find another solution" as an alternative to Plaintiff remaining on the Justice Court team.

70.      On or about September 4, 2020, Plaintiff filed an Amended Charge of Discrimination with the EEOC setting forth the events of the discrimination and retaliation she had faced since the filing of the original Charge.

71.     That same day, Plaintiff's attorney forwarded a copy of the Amended EEOC Charge and supporting affidavit to the Village to the attention of Mr. Kratoville.

72.     Plaintiff was informed receipt of facsimile transmission was confirmed.

73.     Judge Wilson's hostile and abusive treatment of Plaintiff persisted. She continued to question every aspect of Plaintiff's work, places restrictions on her activities at work, and berates Plaintiff.

74.     Since the filing of the amended charge, Judge Wilson's abusive treatment of Plaintiff continued to worsen. Every aspect of Plaintiff's work received heightened scrutiny. She continued to berate Plaintiff, follow Plaintiff around the office, confront Plaintiff regarding what she is doing and where she is going and places increasing restrictions on Plaintiff's ability to use available leave time.

75.     By way of example, on or about Wednesday, January 27, 2021, Plaintiff made a deposit on behalf of the Village Court at the local bank and visited Village Hall as part of the same transaction. Making deposits of Court monies on behalf of the Village Court has been one of Plaintiff's duties since Summer 2020, and Plaintiff leaves the office at least twice a week to complete these deposits. Upon Plaintiff's return to the office on January 27111, Judge Wilson began questioning Plaintiff about where Plaintiff had been and what Plaintiff had been doing and accused her of using Village time to conduct personal business. Plaintiff explained that she was conducting Village business and produced deposit slips from the bank with timestamps as well as providing the name of the Village employee with whom Plaintiff was working at Village Hall.

76.     Thereafter, on or about February 4, 2021, Judge Wilson again interfered with Plaintiff's use of sick time in that she directed the modification of a longstanding practice

regarding a flexible lunch hour combined with sick time to leave early and ordered Plaintiff to forego her lunch hour since Plaintiff had missed the designated period.

77.     The week prior, Plaintiff's counterpart had flexed her lunch hour to leave early from work. Judge Wilson approved her flexible lunch hour and did not require her to take accumulated personal or sick time.

78.     Judge Wilson directed Plaintiff to leave work only one hour early if Plaintiff planned to take one hour of sick time or take two hours of sick time if Plaintiff left as originally requested, without regard to the lunch hour Plaintiff had missed. Judge Wilson told Plaintiff she was not permitted to flex her lunch hour despite the longstanding practice within the office and her allowing Plaintiff's counterpart to do so. It was Plaintiff's understanding after Judge Wilson's directive that this issue was resolved.

79.     On or about Friday, February 5, 2021, Plaintiff was called into the Village Administrator's office under the pretense that they were discussing an ongoing project with Plaintiff, the new Village Administrator, Charlene Kagel-Betts and Judge Wilson.

80.     Instead of discussing the project, Judge Wilson began rehashing the resolved issues outlined above and told Plaintiff "I know you have an EEOC complaint, we will address that another day." This was the first time Judge Wilson had affirmatively mentioned Plaintiff's then-pending EEOC Charge to Plaintiff.

81.     Plaintiff asked the Village Administrator and the Judge if the purpose of the meeting had changed, and the Village Administrator informed Plaintiff Judge Wilson had other matters she would like to discuss first. Plaintiff then asked if she should have a representative or co-worker present at the meeting and Plaintiff was told no.

82. After Judge Wilson went through the bank deposit and modification of the lunch schedule again, the Village Administrator presented Plaintiff with two (2) disciplinary write-ups.

83. First, Plaintiff was written up for "missing for forty (40) minutes" during work hours. However, during this time Plaintiff was performing work duties and depositing Court monies at the bank. This write-up disregarded completely the discussion Judge Wilson and Plaintiff had upon her return to the office. Similar to the prior retaliatory counseling memo issued on September 2, 2020, this write-up contains information that is largely false or pretextual, and to the extent the issue addressed may have occurred, it did not occur as presented in the write-up. Unlike the prior counseling memo, which came from Judge Wilson directly, this write-up was given to Plaintiff from the Village Administrator, Ms. Kagel-Betts.

84. Plaintiff declined to sign the write-up as directed because it was largely false and did not contain the information that Judge Wilson and Plaintiff had discussed.

85. Due to Plaintiff's refusal to sign the incomplete and largely false write-up, Plaintiff was not given a full opportunity to review the second disciplinary write-up nor was Plaintiff provided a copy of either.

86. Upon information and belief, the second write-up pertained to Plaintiff's request for sick time for purposes of a doctor's appointment and a failure to provide twenty-four (24) hours' notice to Judge Wilson. However, there has never before been a requirement to provide twenty-four (24) hours' notice to utilize sick time for a doctor's appointment.

87. Conversely, the summer following the filing of Plaintiff's EEOC charge, the former Village Administrator requested that Plaintiff simply provide advance notice to

Judge Wilson when using sick time. Plaintiff complied with this directive on February 4, 2021 and emailed the Judge at the beginning of the workday.

88.     Notwithstanding Plaintiff's compliance with the prior directive, upon information and belief, Plaintiff received another disciplinary write-up for violating a rule that never before existed and for which Plaintiff was not on notice.

89.     In Plaintiff's over twelve (12) years of employment Plaintiff never received a counseling memo or write-up or any kind until Plaintiff filed the EEOC Charge.

90.     Plaintiff believes these continued actions are designed to facilitate the termination of Plaintiff's employment for unlawful and retaliatory reasons.

91.     As of March 2023, Judge Wilson continued in her egregious, retaliatory conduct against Plaintiff, including but not limited to engaging in intimidation and bullying tactics, questioning Plaintiff's use of any leave time (sick, personal or vacation), and denying time, including sick and vacation.

92.     In essence, Judge Wilson created an unwritten "rule book" applicable only to Plaintiff that contains hoop after hoop that Plaintiff must jump through with respect to nearly every employee - employer interaction.

93.     In or about April 2022, Plaintiff became pregnant with her second child.

94.     In or about June 2022, following an email exchange with Judge Wilson wherein she again questioned Plaintiff's use of sick time, Plaintiff informed the Village's Human Resources Department of her pregnancy.

95.     Plaintiff did not report her pregnancy directly to Judge Wilson for fear of increased discrimination and retaliation. It is Plaintiff's understanding Judge Wilson was informed of the pregnancy.

96.     Due to medical issues, Plaintiff's pregnancies have been considered "high risk", which require multiple doctor's appointments related to the pregnancy.

97.     Despite the existence of the pending Charge of discrimination and retaliation, Judge Wilson continued to demand a doctor's notes and supplemental information each time Plaintiff require use of sick leave, where her counterpart must only request a sick day. Likewise, Plaintiff's counterpart is approved for any leave requests, whereas Plaintiff was am outright denied, or additional hurdles are put in the way to obtain the same benefits.

98.     In or about December 2022, when Plaintiff was eight (8) months pregnant, Judge Wilson again demanded a doctor's note for one day of sick leave. In addition to this demand, Judge Wilson berated Plaintiff for what she had deemed "excessive absences", accusing Plaintiff of having nearly thirty (30) absences.

99.     However, when Judge Wilson inquired with Human Resources on the actual number of Plaintiff's absences, she was informed Plaintiff had taken less than half that amount of sick time.

100.    Shortly thereafter, in response to an email from Plaintiff's union representative informing Judge Wilson Plaintiff was not required to produce a sick note, Judge Wilson feigned ignorance of Plaintiff's pregnancy - despite her obvious condition - and directed Plaintiff's advocate not to contact her directly.

## FIRST CAUSE OF ACTION AGAINST THE DEFENDANT

### (Sex/Pregnancy Discrimination in Violation of Title VII)

101.    Plaintiff realleges and incorporates by reference the allegations set above with the same force and effect as if more fully set forth herein.

102.    Title VII prohibits discrimination on the basis of sex in the terms, conditions, and privileges of employment.

103.    At all relevant times herein, Plaintiff was a member of a protected class as a pregnant female.

104.    At all relevant times herein, Plaintiff was qualified for employment with Defendant and was able to perform the essential functions of the job.

105.    Defendant subjected Plaintiff to disparate treatment because of Plaintiff's sex/pregnancy.

106.    Defendant discriminated against Plaintiff in violation of Title VII by denying Plaintiff rights and benefits on the basis of her sex/pregnancy.

107.    Defendant acted intentionally and with malice and reckless indifference to Plaintiff's rights under Title VII and is thereby liable to Plaintiff for compensatory and punitive damages under Title VII.

108.    As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation, and loss of reputation.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT

### (Discrimination in Violation of the FMLA)

109.    Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

110.     Defendant unlawfully discriminated against Plaintiff in violation of the FMLA by failing to hold her position or an equivalent one during her approved leave, changing Plaintiff's her employment status due to her FMLA leave, and retaliating against her for exercising her FMLA rights.

## THIRD CAUSE OF ACTION AGAINST THE DEFENDANT

### (Sex/Pregnancy Discrimination in Violation of NYSHRL)

111.     Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

112.     The NYSHRL prohibits discrimination on the basis of sex and/or pregnancy in the terms, conditions, and privileges of employment.

113.     At all relevant times herein, Plaintiff was a member of a protected class due to her sex/pregnancy.

114.     At all relevant times herein, Plaintiff was qualified for employment with Defendant and was able to perform the essential functions of the job.

115.     Defendant subjected Plaintiff to disparate treatment because of Plaintiff's sex/pregnancy.

116.     Defendant unlawfully discriminated against Plaintiff on the basis of her sex/pregnancy in violation of the NYSHRL by failing to provide reasonable accommodations, changing the terms and conditions of her employment during her FMLA leave, and denying or delaying requests for leave due to her sex/pregnancy.

## FOURTH CAUSE OF ACTION AGAINST THE DEFENDANT

### (Retaliation in Violation of Title VII)

117.     Plaintiff realleges and incorporates by reference the allegations set above with the same force and effect as if more fully set forth herein.

118.     Title VII makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in an investigation or proceeding under Title VII.

119.     Plaintiff engaged in a protected activity under Title VII by complaining to Defendant and the EEOC regarding the sex/pregnancy discrimination from which she suffered.

120.     Defendant retaliated against Plaintiff for opposing discrimination in violation of Title VII.

121.     Defendant's retaliation against Plaintiff was so distracting that it interfered with Plaintiff's ability to work and made it more difficult for her to perform her job.

122.     Defendant's retaliated against Plaintiff in violation of the ADA by changing the terms and conditions of her employment on the basis of her opposition and complaints concerning discrimination.

123.     As a result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation, and loss of reputation.

## FIFTH CAUSE OF ACTION AGAINST THE DEFENDANT

### (Retaliation in Violation of the FMLA)

124.     Plaintiff realleges and incorporates by reference the allegations set above with the same force and effect as if more fully set forth herein.

125.     The FMLA makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in an investigation or proceeding under the FMLA.

126.     Plaintiff engaged in a protected activity under the FMLA by exercising her right to leave under the FMLA.

127.     Defendant retaliated against Plaintiff by refusing to engage in a good faith interactive process with Plaintiff due to her using FMLA leave.

128.     Defendant retaliated against Plaintiff for exercising her right to leave in violation of the FMLA.

129.     Defendant's retaliation against Plaintiff was so distracting that it interfered with Plaintiff's ability to work and made it more difficult for her to perform her job.

130.     Defendant retaliated against Plaintiff in violation of the FMLA by changing the terms and conditions of her employment on the basis of her opposition and complaints concerning discrimination.

131.     As a result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation, and loss of reputation.

**SIXTH CAUSE OF ACTION AGAINST THE DEFENDANT**

**(Retaliation in Violation of NYSHRL)**

132.     Plaintiff realleges and incorporates by reference the allegations set above with the same force and effect as if more fully set forth herein.

133.     The NYSHRL makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in an investigation or proceeding under the NYSHRL.

134.     Plaintiff engaged in a protected activity under the NYSHRL by complaining to Defendant regarding the discrimination from which she suffered.

135.     Defendant retaliated against Plaintiff for opposing sex/pregnancy discrimination in violation of NYSHRL.

136.     Defendant's retaliation against Plaintiff was so distracting that it interfered with Plaintiff's ability to work and made it more difficult for her to perform her job.

137.     Defendant retaliated against Plaintiff in violation of NYSHRL by changing the terms and conditions of her employment on the basis of her opposition and complaints concerning discrimination.

138.     As a result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, inter alia, inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation, and loss of reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Leith McLoughlin respectfully requests that this Court grant the following relief:

139.     A declaratory judgment that the actions and practices of Defendant violated the FMLA, Title VII, and NYSHRL;

140.     All damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits she would have received but for Defendant's discriminatory practices, and for inconvenience, loss of enjoyment, emotional distress, humiliation, loss of reputation, and mental anguish;

141.     Front pay to Plaintiff until such time as he can be placed in the position, she would have occupied but for Defendant's discriminatory practices;

142.     Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless, and/or intentional conduct;

143.     Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

144.     Pre-judgment and post-judgment interest, as provided by law; and

145.     Granting Plaintiff other and further relief as this Court finds necessary and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Leith McLoughlin demands a trial by jury on all issues and claims in this action.

Dated: August 28, 2023
        Glen Cove New York

Respectfully submitted,

_____
Adam C. Weiss, Esq.

The Law Firm of Adam C. Weiss, PLLC
3 School Street, Suite 303
Glen Cove, New York 11542
(516) 277-2323
adam@acweisslaw.com