UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LEITH MCLOUGHLIN,

                     Plaintiff,

     -against-

VILLAGE OF SOUTHAMPTON,

                   Defendant.
-----------------------------------------------------------------X

**FILED**
**CLERK**

2:38 pm, Sep 13, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM &**
**ORDER**
CV 23-6586 (GRB)(AYS)

**GARY R. BROWN, United States District Judge:**

    Presently before the Court is defendant's partial motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]  For the reasons stated herein, that motion is GRANTED in part and DENIED in part.

    **BACKGROUND**

    All allegations are drawn from the complaint and taken as true for the purpose of deciding this motion.  Plaintiff Leith Mcloughlin brings this employment discrimination action against the Village of Southampton (the "Village"), asserting claims for pregnancy/sex discrimination in violation of Title VII and the New York State Human Rights Law ("NYSHRL"); discrimination in violation of the Family and Medical Leave Act ("FMLA"); and retaliation in violation of Title VII, NYSHRL, and the FMLA.  Plaintiff began her employment with defendant Village of Southampton in May 2008 as a Justice Court Clerk, responsible for performing various duties both in and out of court under the supervision of Judge Barbara Wilson.  Complaint, Docket Entry ("DE") 1 ¶¶ 11-12.  Plaintiff maintained a professional

---

[1] Defendant has not moved to dismiss plaintiff's Title VII retaliation claim, which is unaffected by this order.

relationship with Judge Wilson until September 2019, when plaintiff informed Judge Wilson that she was pregnant. *Id*. ¶ 14. Plaintiff alleges that Judge Wilson then took numerous actions against her during and after her pregnancy, including:

- Questioning plaintiff's intelligence and belittling her in front of others. *Id*. ¶¶ 17, 24.
- Moving plaintiff's workstation to a back office, purportedly to "accommodate breastfeeding." *Id*. ¶¶ 18-21, 40.
- Denying an overtime request by plaintiff in February 2020. *Id*. ¶ 34.
- Calling plaintiff repeatedly to inquire about work matters while plaintiff was on maternity leave. *Id*. ¶ 37.
- Preventing plaintiff from visiting the office while on leave and falsely informing other employees that plaintiff had been exposed to COVID-19. *Id*. ¶¶ 38, 42-44.
- Forbidding plaintiff from using sick days to perform childcare, instructing her to instead use vacation days. *Id*. ¶¶ 48-53.
- Threatening to modify plaintiff's position to part-time. *Id*. ¶¶ 57-58.
- Subjecting plaintiff to excessive scrutiny, including by issuing her a "counseling memo" that suggested she find a different job. *Id.* ¶¶ 65-69.
- Requiring plaintiff to provide documentation, including doctor's notes, before granting medical leave requests. *Id*. ¶¶ 92, 97-98.

Plaintiff reported these and other issues to the Village Administrator, who failed to address her complaints. *Id*. ¶¶ 23, 29-30. Plaintiff then filed a Charge of Discrimination with the EEOC on July 23, 2020. *Id*. ¶ 61. On February 5, 2021, Judge Wilson called plaintiff into a meeting during which she allegedly criticized plaintiff, restricted when she could take her lunch break, and alluded to the EEOC complaint. *Id*. ¶¶ 79-86.

Plaintiff became pregnant again in April 2022 and reported her pregnancy to the Village's human resources department shortly thereafter. *Id*. ¶¶ 93-94. Plaintiff took several days off during her second pregnancy due to health concerns; on each of these occasions, Judge Wilson requested a doctor's note before approving plaintiff's sick leave request. *Id*. ¶¶ 96-98. Plaintiff's union representative informed plaintiff—and Judge Wilson—that plaintiff was not required to provide doctor's notes once she reached an advanced stage of her pregnancy. *Id.* ¶ 100.

Plaintiff received a right to sue letter from the EEOC and timely filed her complaint on August 28, 2023.  *See generally id.*  Defendant filed a premotion conference request, seeking dismissal of plaintiff's discrimination claims under both Title VII and NYSHRL, retaliation claim under NYSHRL, FMLA interference claim, and those portions of the FMLA retaliation claim addressing conduct outside the statute of limitations.  DE 10.  At the premotion conference, held on February 27, 2024, the Court asked whether any of the issues raised by defendant's counsel could be addressed by amending the complaint.  In response, plaintiff's counsel represented that an amended complaint would not contain any additional factual allegations or correct any of the perceived deficiencies, so the Court ordered the parties to fully brief the issues.  Electronic Order dated February 27, 2024.  Defendant filed its motion to dismiss, DE 17, and accompanying memorandum on May 14, 2024.  DE 17-3.  Plaintiff filed a memorandum in opposition, DE 17-4, and defendant filed a reply in further support.  DE 17-5.

**DISCUSSION**

***Standard of Review***

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3–4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein.  The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible. *See id*.

***Plaintiff's failure to serve a notice of claim bars her NYSHRL claims***

Claims against villages under New York law are governed by N.Y. C.P.L.R. § 9802, which states:

> Except as provided otherwise in this chapter no action shall be maintained against the village upon or arising out of a contract of the village unless the same shall be commenced within eighteen months after the cause of action therefor shall have accrued, nor unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued, and no other action shall be maintained against the village unless the same shall be commenced within one year after the cause of action therefor shall have accrued, nor unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law.

"To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed."[2] *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013).

Plaintiff's NYSHRL claims turn on whether § 9802 applies to employment discrimination claims. The provision clearly applies to contract claims, and the Second Department held that "the 'no other action' language contained in CPLR § 9802 permits no exceptions" and applied the provision to bar non-contractual claims in the absence of a notice of claim. *Solow v. Liebman*, 175 A.D.2d 867, 869 (N.Y. App. Div. 2d Dep't 1991); *see also Eugene Racanelli, Inc. v. Inc. Vill. of Babylon*, 92 A.D.3d 635, 636 (N.Y. App. Div. 2d Dep't 2012) (applying § 9802 to bar claims for "unjust enrichment, equitable estoppel, and negligent and intentional misconduct"). As such, the Court concludes § 9802 applies to employment discrimination claims.[3] *See Pohlman v. Vill. of Freeport*, No. 19-CV-05277 (DLI)(RLM), 2020 WL 5878257, at *6 (E.D.N.Y. Sept. 30, 2020) ("Plaintiff cites no authority for the proposition

---

[2] To the extent this Court has the power to excuse plaintiff from this requirement, it declines to do so. *See Domni v. Cnty. of Nassau*, No. 19-CV-00083 (JMA)(LGD), 2022 WL 16950055, at *2 (E.D.N.Y. Nov. 14, 2022).

[3] *Cf. Mills v. Monroe Cnty.*, 59 N.Y.2d 307 (N.Y. 1983) (concluding that a similarly worded statute imposed a notice of claim requirement on employment discrimination actions against counties).

that the statute does not apply to employment discrimination actions. . . . Indeed, by its terms, §

9802 applies to all types of claims.").  Therefore, plaintiff's NYSHRL claims are dismissed for

lack of subject matter jurisdiction based on her failure to file a notice of claim.

> ### *Plaintiff has not plausibly alleged an adverse action to support a Title VII discrimination claim*

Plaintiff also asserts a claim of employment discrimination under Title VII.  At this stage,

plaintiff is not required to plead a prima facie case of employment discrimination, but need only

"allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion,

sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead*

*Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).  "The Pregnancy Discrimination Act

makes clear that Title VII's prohibition against sex discrimination applies to discrimination

based on pregnancy."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015).

Here, whether plaintiff has stated a viable claim depends on whether she has plausibly

alleged one or more adverse employment actions.  In this context, an adverse action is "a

materially adverse change in the terms and conditions of employment."  *Sanders v. N.Y. City*

*Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  "Examples of such a change include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices unique to a particular situation."  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d

Cir. 2008); *see also Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 976–77, 218 L. Ed.

2d 322 (2024) (holding that a plaintiff must allege "some injury respecting her employment

terms and conditions," but that the injury need not be "significant" or "substantial").  None of the

events alleged here, taken individually or together, constitute adverse actions.

## I.     Office or desk relocation

An employer's decision to relocate an employee's desk does not constitute an adverse employment action.  *See Cunningham v. N.Y. Dep't of Labor*, 326 F. App'x 617, 619 (2d Cir. 2009) (no adverse action based on "litany of actions" taken against plaintiff including a desk reassignment from a fifth-floor office to a first-floor office); *see also Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 296 (E.D.N.Y. 2016) ("the relocation of her desk appears to be nothing more than an inconvenience"); *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (same).  Therefore, plaintiff did not suffer an adverse action based on the alleged relocation of her workstation, even if the new location was less convenient or desirable.

## II.    Disciplinary reviews and excessive scrutiny

"[T]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action."  *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006).  "[A]n employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."  *Id*.  The Second Circuit has routinely applied this rule to conclude that written and oral warnings cannot form the basis of a discrimination claim.  *See, e.g.*, *Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (holding that such warnings were "trivial harms" outside the scope of Title VII); *Thomson v. Odyssey House,* 652 F. App'x 44, 46 (2d Cir. 2016) ("excessive scrutiny is not an actionable adverse employment action").  Thus, Judge Wilson's use of "counseling memos" and scrutiny of plaintiff's work do not rise to the level of adverse employment actions.

### III.    Denial of overtime

Courts have sometimes found denials of overtime to constitute adverse employment actions. *See, e.g.*, *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020). However, isolated or conclusorily alleged instances of overtime denial are routinely rejected. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 218 (E.D.N.Y. 2014) (collecting cases). Furthermore, a plaintiff must allege how the overtime denial resulted in a "material detriment…such as [lost] opportunities for career advancement," which is rarely implicated if the denials are infrequent. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014).

Here, plaintiff only alleged one occasion when she was denied overtime (on February 21, 2020), which she admits was the first time such an incident occurred in over a decade of employment. DE 1 ¶ 34. Plaintiff has failed to identify any negative career impact from this occurrence, firmly establishing this as the sort of isolated incident that other courts in this circuit have found insufficient to support a discrimination claim. As such, the Court concludes that the single overtime denial does not constitute an adverse action.

### IV.    Threatened changes in employment status

Although a demotion from a full-time to a part-time employment status can be "sufficiently disadvantageous to be considered an adverse employment action," *Williams v. R.H. Donnelley*, *Corp.*, 368 F.3d 123, 128 (2d. Cir. 2004), "a mere threat of employment action that is not ultimately realized cannot constitute an adverse action." *Bernstein v. New York City Dep't of Educ.*, No. 19-CV-11816 (LJL), 2020 WL 6564809, at *6 (S.D.N.Y. Nov. 9, 2020); *see also Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV. 5088 (RMB)(HBP), 2014 WL 1259616, at *10 (S.D.N.Y. Mar. 24, 2014) (same). Here, plaintiff alleges only that Judge Wilson threatened to

convert plaintiff to a part-time employee on one occasion.  This threat, which was never carried into effect, is not an adverse employment action.

### V.      Requiring documentation for medical leave requests

"[A]n employer's request for documentation in connection with medical leave does not constitute an adverse employment action."  *Blake v. Potter*, No. 03-CV-7733, 2007 WL 2815637, at *6 (S.D.N.Y. Sept. 25, 2007), *aff'd*, 330 F. App'x 232 (2d Cir. 2009); *see also Solomon v. Southampton Union Free Sch. Dist.*, No. 08-CV-4822, 2011 WL 3877078, at *8 (E.D.N.Y. Sept. 1, 2011), *aff'd*, 504 F. App'x. 60 (2d Cir. 2012) (same).  Therefore, Judge Wilson did not subject plaintiff to an adverse employment action by requiring her to provide doctor's notes before approving her use of sick days.

### VI.     Criticism and rude comments

Finally, demeaning comments, including "excessively harsh criticism," generally do not constitute adverse employment actions.  *Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 479 (2d Cir. 2009).  "Being subjected to insulting language or unfair criticism in the presence of other employees does not constitute an adverse employment action without further indication of a material impact on the terms and conditions of employment."  *Richards v. Dep't of Educ. of City of New York*, No. 21-CV-338 (LJL), 2022 WL 329226, at *9 (S.D.N.Y. Feb. 2, 2022) (internal quotations omitted); *see also James v. Mun. Credit Union*, No. 13-CV-4568 (LTS)(KNF), 2016 WL 698136, at *4 (S.D.N.Y. Feb. 19, 2016) ("Courts in this circuit have held that adverse comments, criticism, threats to…employment, close scrutiny, and yelling…do not qualify as adverse employment actions.").

Here, although plaintiff asserts that Judge Wilson berated her on several occasions, she has not provided any facts to suggest that these incidents rose to the level of impacting the terms

and conditions of her employment.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII…does not set forth a general civility code for the American workplace."). Accordingly, Judge Wilson's alleged instances of criticizing and shouting at plaintiff are not adverse actions.

In summary, none of the individual allegations raised by plaintiff suggest that she suffered an adverse action that materially altered the terms and conditions of her employment. Plaintiff contends that these allegations, taken together, constitute an adverse action even if no specific event would qualify; but even to the extent this sort of "aggregation" approach is viable, the totality of events alleged here does not reach the level of an adverse action.  *See Cunningham*, 326 F. App'x at 619 (considering a "litany of actions" including "unfounded charges of time abuse, (2) reassignment from a fifth-floor office to a first-floor office…(3) opposition…to hiring plaintiff's son in a summer job; (4) [and] discontinuing a training conference organized by plaintiff," and holding that "plaintiff's allegations are—each and together—nothing more than everyday workplace grievances"); *see also Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *8 (E.D.N.Y. Sept. 24, 2014) (holding that instances of criticizing, yelling, and nitpicking at a plaintiff, "even when considered in the aggregate, lack the requisite level of material impact required to establish an adverse employment action for purposes of a gender discrimination claim").  As such, plaintiff has not raised a plausible claim of discrimination under Title VII, and that claim is dismissed with prejudice.

### *Plaintiff has not stated a plausible FMLA interference claim*

Under the FMLA, eligible employees are entitled to twelve weeks per year of unpaid leave "because of a serious health condition that makes the employee unable to perform the

functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  Employers are

prohibited from either interfering with an employee's rights under the statute or retaliating

against an employee for exercising those rights.  *See Woods v. START Treatment & Recovery

Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).  To state an FMLA inference claim, a plaintiff must

plausibly allege that (1) "she is an eligible employee under the FMLA"; (2) "the defendant is an

employer as defined by the FMLA"; (3) "she was entitled to take leave under the FMLA"; (4)

"she gave notice to the defendant of her intention to take leave"; and (5) "she was denied

benefits to which she was entitled under the FMLA."  *Graziadio v. Culinary Inst. of Am.*, 817

F.3d 415, 424 (2d Cir. 2016).  The final element may be shown either via a formal denial of

benefits or via a "discouragement theory," which is present if an employee "tried to assert her

FMLA rights and was thereafter discouraged from taking FMLA leave."  *De Figueroa v. New

York*, 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019).  Other district courts have held that a claim

under a discouragement theory may be asserted if either (1) the employee was actually

discouraged from taking leave, or (2) a reasonable employee would have been discouraged from

doing so.  *Golden v. New York City Dep't of Env't Prot.*, No. 06 CIV. 1587 (DLC), 2007 WL

4258241, at *3 (S.D.N.Y. Dec. 3, 2007).

     Here, plaintiff has failed to plausibly allege that she was denied or discouraged from

taking FMLA leave.  While she articulates subjective concerns, Plaintiff does not allege that she

was ever dissuaded from requesting leave.  *See, e.g.*, *Greenberg v. State Univ. Hosp.-Downstate

Med. Ctr.*, No. 15-CV-2343 (PKC)(VMS), 2019 WL 4752018, at *17 (E.D.N.Y. Sept. 29, 2019),

*aff'd*, 838 F. App'x 603 (2d Cir. 2020) (rejecting FMLA interference claim by a plaintiff who

requested and received leave but was later terminated, holding that "Plaintiff is alleging

retaliation and not interference").  Moreover, courts in this circuit have consistently held that the

type of conduct plaintiff alleges here is insufficient to discourage a reasonable employee from asserting her FMLA rights.  *See, e.g.*, *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 536 (S.D.N.Y. 2009) (holding that a reasonable employee would not have been discouraged from taking FMLA leave based on supervisor's negative comments about the employee's pregnancy, particularly since leave requests could instead be addressed to the employer's human resources department); *Hockenjos v. Metro. Transp. Auth.*, No. 14 Civ. 1679 (PKC), 2016 WL 2903269, at *9 (S.D.N.Y. May 18, 2016) ("Criticizing, even berating an employee's substantive job performance is not enough to assert a claim for interference under a discouragement theory.").  Since plaintiff has not sufficiently alleged that she was formally denied FMLA benefits or was discouraged from exercising them, her FMLA interference claim is dismissed.

### *Statute of Limitations for an FMLA retaliation claim*

Whether plaintiff's FMLA retaliation claim is governed by a two-year statute of limitations, which is the standard for FMLA claims, *see* 29 U.S.C. § 2617(c)(1), or a three-year statute of limitations, turns on the issue of willfulness.  *See id.* § 2617(c)(2).  An alleged FMLA violation is willful if an employer either knew or recklessly disregarded whether its conduct violated the FMLA.  *See Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531–32 (2d Cir. 2004). However, "if an employer act[ed] reasonably, [or] unreasonably but not recklessly in determining its legal obligation, then [the alleged violation] should not be considered willful." *See id.*

The Second Circuit has stated, when assessing a motion to dismiss, that "retaliating against an employee for exercising FMLA rights is almost by definition a 'willful' violation." *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 55 n.2 (2d Cir. 2017); *see also De Figueroa v. New York*, 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019) ("Because these [alleged] actions, if taken

under circumstances giving rise to an inference of retaliation, would exhibit reckless disregard of their obligations under the FMLA, the Court finds that the FMLA's three-year statute of limitations applies.").

Thus, the three-year statute of limitations applies, rendering all conduct occurring on or before September 2, 2020, timely for purposes of the FMLA retaliation claim. Plaintiff has clearly alleged conduct that could be construed as retaliation for taking medical leave during her first pregnancy; drawing all inferences in plaintiff's favor, it is certainly plausible that the actions complained of were taken knowingly and willfully. This result is consistent with *Offor* and other cases decided at the motion to dismiss stage, but may be readdressed following discovery depending on whether evidence of willfulness is ultimately produced.

Plaintiff argues that the Court should further extend the limitations period via the continuing violations doctrine. However, the Second Circuit has never applied this doctrine to the FMLA, and district courts in this circuit have repeatedly declined to do so when presented with similar arguments. *See, e.g.*, *Basso v. Willow Run Foods, Inc.*, 577 F. Supp. 3d 73, 81 (N.D.N.Y. 2022) ("The continuing violations doctrine…does not apply to FMLA claims."); *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 463 n.14 (S.D.N.Y. 2011) ("Plaintiff has not pointed to any case law applying the continuing violation doctrine to the FMLA. In fact, the weight of authority leans decidedly against Plaintiff."). Thus, this Court will not apply the continuing violation doctrine to plaintiff's FMLA retaliation claim.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED WITH PREJUDICE as to the NYSHRL claims, the Title VII discrimination claim, and the FMLA

interference claim.  Plaintiff's FMLA retaliation claim is also limited to events occurring on or after September 2, 2020.

**SO ORDERED.**

Dated: Central Islip, New York
September 13, 2024

/s/ **Gary R. Brown**
GARY R. BROWN
United States District Judge

13